Not For Publication

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                                        )
IN RE:                                  )   CASE NO.        06-31530 (LMW)
                                        )
  DEBORAH M. HALLISEY,                  )   CHAPTER         13
                                        )
      DEBTOR.                           )   DOC. I.D. NO.   30
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**APPEARANCES**

Molly T. Whiton, Esq.                      Chapter 13 Trustee
10 Columbus Boulevard
Hartford, CT 06106

Amon James, Esq.                           Assistant U.S. Trustee
265 Church Street, Suite 1103
New Haven, CT 06510

Zenas Zelotes, Esq.                        Attorney for the Debtor
Zenas Zelotes LLC
P.O. Box 7123
Groton, CT 06340

**MEMORANDUM AND ORDER GRANTING (IN
PART) MOTION TO DISGORGE ATTORNEY'S FEES**

Lorraine Murphy Weil, United States Bankruptcy Judge

  Before the court is the chapter 13 trustee's (the "Trustee") Motion To Disgorge Attorney's Fees (Doc. I.D. No. 30, the "Motion") wherein the Trustee requests that the fees (the "Fees") received in this proceeding by Attorney Zenas Zelotes ("Attorney Zelotes") be returned to the above-captioned debtor (the "Debtor"). This court has jurisdiction over this core matter pursuant to 28

U.S.C. §§ 157(b) and 1334 and that certain order dated September 21, 1984 of the District Court (Daly, C.J.).[1]

## I.    BACKGROUND

The Debtor commenced this chapter 13 proceeding by filing a voluntary petition (the "Petition") on September 14, 2006. (Doc. I.D. No. 1.) On September 29, 2006, the Debtor filed her schedules (Doc. I.D. No. 18), a Statement of Financial Affairs (Doc. I.D. No. 20, the "Financial Statement"), a Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (Doc. I.D. No. 21, the "Income Statement"), two recent pay stubs (Doc. I.D. No. 17), and a chapter 13 plan (Doc. I.D. No. 22, the "Proposed Plan").[2] The first question on the Financial Statement (Income from employment or operation of business) contained five items which are listed as follows:

| AMOUNT | SOURCE |
|---|---|
| 3,870.00 | 2006 -- Debtor's Employment YTD Appx. |
| 1,005.00 | 2005 -- Debtor's Employment |
| 0.00 | 2005 -- Former Husband: $69,315.00 |
| 0.00 | 2004 -- None -- Former Husband: $76,673.00 |
| 0.00 | Fifth Amendment Asserted |

(Doc. I.D. No. 20.) In response to question nine on the Income Statement (Income from all other sources), the source line contains the phrase "Fifth Amendment Asserted" and the amount line shows

---

[1] That order referred to the "Bankruptcy Judges for this District" *inter alia* "all proceedings arising under Title 11, U.S.C. . . . ."

[2] The Proposed Plan was not a "100% plan" which allowed for the payment in full of all existing debts. The Financial Statement and the Income Statement are collectively referred to below as the "Statements."

- 2 -

the amount of $1.00. (Doc. I.D. No. 21.) The final document filed on September 29 was a Disclosure of Compensation form in which Attorney Zelotes agreed to accept from the Debtor the sum of $2,500.00 as compensation for his services. Of that amount, $1,500.00 was listed as already having been received. (Doc. I.D. No. 19.)

On September 19, 2006, the Trustee filed a Request for Confirmation Hearing and Motion To Dismiss, requesting dismissal of the case in the absence of a confirmable plan. (*See* Doc. I.D. No. 12, the "Motion To Dismiss.") A hearing on the Motion To Dismiss was scheduled for November 30, 2006. A meeting of creditors pursuant to Bankruptcy Code § 341(a) was scheduled for October 26, 2006, but subsequently was continued until November 30, 2006, the date of the aforementioned hearing, when the Debtor failed to appear. (*See* Transcript (as defined below) at 18-19.) As neither the Debtor nor Attorney Zelotes appeared at the November 30th hearing, the Trustee proceeded on the Motion To Dismiss. The Trustee noted that the Debtor had failed to attend the Section 341 meeting, had failed to make payments on the Proposed Plan, and had not submitted the required tax returns. (*See* Oral Record at 11:18:32 *et seq.*) The court dismissed the case with prejudice based upon the Debtor's failure to prosecute,[3] imposing a 180-day bar on refiling. (*See* Oral Record at 11:20:42; Doc. I.D. No. 31.)

---

[3] The Trustee raised the issue of whether the Debtor's assertion of the Fifth Amendment privilege in the Statements rendered the Petition a *per se* bad faith filing which alone might have warranted dismissal. (*See* Oral Record at 11:18:40 *et seq.*) However, the court did not address that issue in dismissing the case. (*See id.*) Moreover, the court does not believe that *In re Pelko*, 201 B.R. 331 (Bankr. D. Conn. 1996) (Krechevsky, J.), compels such a holding, even in a chapter 13 case. In *Pelko*, the debtor asserted the Fifth Amendment during his Section 341 examination. *Pelko* ordered the case dismissed because such assertion rendered the case virtually unadministratable. This court believes that the filing of the petition is too early for a court to make such a determination. Such a determination ordinarily should be made only after the Section 341 meeting. (For example, the debtor might recant his or her assertion of the Fifth Amendment privilege at the Section 341 meeting or the trustee might be able to determine that a plan might be confirmable even if the debtor continues to invoke the privilege.)

On December 7, 2006, the Trustee filed the Motion. (Doc. I.D. No. 30.) Therein, the Trustee alleged that Attorney Zelotes had "failed to properly prosecute this case and failed to have his client provide all of the required information." (*Id.* ¶ 4.) The Motion called for Attorney Zelotes to disgorge any and all Fees related to the case pursuant to Bankruptcy Code § 329(b). A hearing on the Motion was scheduled for January 11, 2007. Attorney Zelotes did not appear at the hearing and the court granted the Motion, allowing Attorney Zelotes ten days from January 16, 2007 to surrender all Fees paid in the case to the Trustee. (*See* Doc. I.D. No. 35.) On January 23, 2007, Attorney Zelotes filed a motion to reconsider that order.[4] (*See* Doc. I.D. No. 37.) The court granted the motion to reconsider (*see* Doc. I.D. No. 41) and vacated its previous order granting the Motion (Doc. I.D. No. 42). An evidentiary hearing (the "Hearing")[5] on the Motion was then scheduled for March 19, 2007.

The Hearing was attended by Attorney Zelotes, the Trustee, and the Assistant United States Trustee (the "UST").[6] The Trustee called for the disgorgement of the Fees, alleging that Attorney Zelotes had not properly prosecuted the case due to his assertion of the Fifth Amendment privilege on behalf of the Debtor in the Statements. (*See* Transcript at 43-44.)

---

[4] In his motion to reconsider, Attorney Zelotes asserted his intent to appear at the hearing to contest the Motion, but cited (among other things) his involvement in his own divorce proceeding as the reason for his failure to appear. He allegedly sent a letter to the Trustee asking for a continuance, but did not receive confirmation of the Trustee's intent to proceed until after the hearing.

[5] A transcript (the "Transcript") of the Hearing appears in the docket as Doc. I.D. No. 49.

[6] The UST appeared in support of the Motion. The Debtor also personally appeared in support of the Motion.

At the Hearing, the Debtor testified on behalf of the UST and Attorney Zelotes testified on his own behalf. As the testimony of Attorney Zelotes and that of the Debtor is in direct conflict as to many of the events leading up to, and subsequent to, the filing of the Debtor's Petition, the court will summarize the key aspects of such testimony as follows. Attorney Zelotes testified to the following facts:

- The Debtor approached him two days before a foreclosure sale on her home, expressing her concern that "she and her children were going to be out on the streets." (Transcript at 9.)

- Attorney Zelotes counseled the Debtor as to the differences between filings under the various Bankruptcy Code chapters and provided her with written notice as required by Section 342(b). (*Id.* at 31.)

- The Debtor told him she was working "under the table" so as not to risk the loss of her disability benefits. (*Id.* at 32.) For this work she was receiving additional income ("Additional Income") in the amount of $350.00 per week. (*Id.* at 42.)

- Attorney Zelotes faxed the Debtor the required forms between nine and ten o'clock at night on a date "somewhat close to the wire" as pertaining to the filing deadline. Both he and the Debtor proceeded to teleconference, with Attorney Zelotes going over every line of each form and specifically highlighting the assertion of the Fifth Amendment privilege. (*See id.* at 34-36.) Attorney Zelotes told the Debtor that the only way to proceed was to assert such privilege. (*Id.* at 33.)

- The Debtor was alerted to the fact that her income tax returns were required for the Section 341 meeting by Attorney Zelotes. When the Debtor related that the said

    forms were in the possession of her ex-husband and that she was having difficulty obtaining them, Attorney Zelotes stated that the Section 341 meeting would likely need to be continued. (*Id.* at 36.)

- Attorney Zelotes called the Debtor and alerted her to the necessity of making payments on both the Proposed Plan and her existing mortgage. (*Id.* at 36-37.) She responded, "I don't have any money. I can't afford to do this." (*Id*. at 37:12-13.) Thereafter, the Debtor failed to return Attorney Zelotes' phone calls and letters, leading him to conclude that "there's nothing I can do at this point." (*See id.* at 36-38; 38:13-14.)

The events as described in the Debtor's testimony are as follows:

- The Debtor's reason for filing bankruptcy was to "secure what little bit of equity [she] had left [in her home], in an attempt to try to work out a repayment plan and keep from going under." (*Id.* at 23:1-3.)

- The Debtor met with Attorney Zelotes at his office approximately one or two weeks prior to the scheduled foreclosure sale on her home. (*Id.* at 20.) That was the only time prior to the Hearing that the Debtor met with Attorney Zelotes in person. (*Id.*)

- The foregoing meeting lasted about half an hour, during which Attorney Zelotes provided her with a "packet" which detailed the information needed for her filing. She returned the "packet" four or five days later with all of the information save for the aforementioned tax returns. (*Id.* at 20.)

- On the eve of the filing deadline, various documents (e.g., the Statements) related to the Debtor's Petition were faxed to her by Attorney Zelotes at about nine-thirty in the evening. The Debtor signed and returned the forms as requested. (*Id.* at 23-24.)

- That night, the Debtor received a call from Attorney Zelotes who spoke to her from a cell phone while in his car. During the conversation he did not explain the various forms to the Debtor. (*Id.* at 41.)

- The Debtor had previously alerted Attorney Zelotes to issues respecting her income, relating that she was receiving Additional Income in the amount of $50.00 per week in return for meals prepared for a family friend. (*Id.* at 40-41.)

- The Debtor never told Attorney Zelotes that she did not want to disclose the Additional Income on her bankruptcy pleadings. Nor did she express concern that such disclosure would jeopardize her ability to maintain her disability benefits as the Additional Income had already been disclosed before the state court in the Debtor's divorce proceeding. (*Id.* at 54-55.)

- The Debtor had never discussed with Attorney Zelotes the possibility of asserting the Fifth Amendment privilege as to the Additional Income. (*Id.* at 24.) At the time she signed the forms, the Debtor did not realize that the Fifth Amendment was being asserted. (*Id.* at 23-24.)

- When her Petition was filed, the Debtor did not understand the differences between the various Bankruptcy Code chapters. Attorney Zelotes had not explained such differences to her nor had he provided her with any materials in this regard. (*Id.* at 22.)

- The Debtor had not discussed the terms of the Proposed Plan with Attorney Zelotes before it was filed. (*Id.* at 23.)

- The Debtor had been told by Attorney Zelotes that she need not appear at the Section 341 meeting. (*Id.* at 24-25.)

## II.  DISCUSSION

### A.  Legal Standard

Bankruptcy Code § 329 provides as follows:

>  (a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.
>  (b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to–
>    (1) the estate, if the property transferred–
>      (A) would have been property of the estate . . . ; or
>    (2) the entity that made such payment.

11 U.S.C.A. § 329 (West 2007). It is ultimately for the court to decide whether or not the compensation is reasonable under Section 329(b). "What constitutes reasonableness is a question of fact to be determined by the particular circumstances of each case. The requested compensation may be reduced if the court finds that the work done was excessive or of poor quality." 3 Alan N. Resnick and Henry J. Sommer, *Collier on Bankruptcy* ¶ 329.04[1], at 329-15 (15th ed. rev. 2006). In determining the reasonableness of a given fee, the court should consider the competence of the performance and the nature of the services. *In re Grant*, 14 B.R. 567, 569 (Bankr. S.D.N.Y. 1981). Other relevant considerations include "the attorney's legal experience and the failure or success in

accomplishing [the] desired result on the debtor's behalf." *In re Ostas*, 158 B.R. 312, 323 (N.D.N.Y. 1993) (internal quotation marks omitted).

Particularly within the context of bankruptcy, an attorney has an obligation to ensure that his or her client has sufficient knowledge and understanding of the various options available to the latter under title 11 of the United States Code. Exhibit B ("Exhibit B") of Official Bankruptcy Form B l (Voluntary Petition), which must be signed by the attorney for an individual debtor whose debts are primarily of the consumer variety, provides as follows:

> I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I *further* certify that I delivered to the debtor the notice required by 11 U.S.C. § 342(b).[7]

Exhibit B (emphasis added). As pertains to bankruptcy law, in general "an attorney has an affirmative duty to meet with his or her clients, to counsel those clients regarding the legal

---

[7] 11 U.S.C. § 342(b) provides as follows:

(b) Before the commencement of a case under this title by an individual whose debts are primarily consumer debts, the clerk shall give to such individual written notice containing–
    (1) a brief description of–
        (A) chapters 7, 11, 12, and 13 and the general purpose, benefits, and costs of proceeding under each of those chapters; and
        (B) the types of services available from credit counseling agencies; and
    (2) statements specifying that–
        (A) a person who knowingly and fraudulently conceals assets or makes a false oath or statement under penalty of perjury in connection with a case under this title shall be subject to fine, imprisonment, or both; and
        (B) all information supplied by a debtor in connection with a case under this title is subject to examination by the Attorney General.

11 U.S.C.A. § 342 (West 2007).

significance of their actions and to answer any questions or concerns which the clients may raise." *In re Dalton*, 95 B.R. 857, 860 (Bankr. M.D. Ga. 1989). *See also In re Wright*, 48 B.R. 172, 174 (Bankr. E.D.N.C. 1985) ("Debtors have the right when they retain an attorney to represent them to receive the guidance, counsel, and support for which they pay.").

### B. Application of Law to Fact

The court finds the Debtor's testimony more persuasive than Attorney Zelotes' testimony in relevant respects.[8] The record indicates that the Debtor was not adequately counseled by Attorney Zelotes. In signing Exhibit B on the Petition (*see* Doc. I.D. No. 1 at 2), Attorney Zelotes affirmed to the court that he had informed the Debtor adequately of her choices under title 11 as well as the relief available thereunder. However, as noted above, at the Hearing the Debtor testified that Attorney Zelotes did not counsel her about the various chapters. Even if a written explanation of the chapters (i.e., a Section 542(b)(1) notice) had been in the "packet" given to the Debtor (and the Debtor implies that it was not), a verbal "explanation" still would have been required.[9]

Furthermore, the court is persuaded that the Debtor did not intend for Attorney Zelotes to assert the Fifth Amendment privilege on her behalf. As testified to by the Debtor, the Additional Income already had been made public in another court. The Debtor had expressed no desire to avoid such disclosure in the present case, nor had she discussed that matter with Attorney Zelotes before the filing. Given the context in which the Debtor received the required bankruptcy forms (by fax on the night before the filing deadline) it is not surprising that the Fifth Amendment assertion would

---

[8] The court so finds notwithstanding the Debtor's expressed financial interest in any disgorged Fees.

[9] Exhibit B contemplates an "explanation" in addition to delivery of the Section 542(b)(1) notice or the word "further" in the last sentence of Exhibit B would be superfluous.

- 10 -

have been overlooked by the Debtor. It is unlikely that the Debtor could have been provided with an adequate explanation as to the ramifications of a Fifth Amendment assertion (as it pertains to an income-sensitive chapter 13 proceeding, *cf. Pelko*, *supra*) by Attorney Zelotes when the conversation regarding the said forms was conducted from his car via cellular phone. Thus, despite having signed the various forms, the court finds that the assertion of the Fifth Amendment privilege as to the Additional Income was not made with the Debtor's knowledge and consent.

Finally, the court is disturbed by the fact that Attorney Zelotes did not discuss the Proposed Plan with the Debtor before he filed it.

Attorney Zelotes argues that the Debtor was not injured by the filing of the Petition and that this chapter 13 case ultimately failed because of the Debtor's inaction, not his. That may be so, but Attorney Zelotes did not help matters by giving the Debtor such inadequate counseling prior to filing the Petition and prior to filing the Proposed Plan. Weighing those considerations, the court concludes that the interests of justice will be served by requiring Attorney Zelotes to disgorge $750.00 to the Debtor on or before August 13, 2007 and by cancelling Attorney Zelotes' right (if any) to receive any further compensation from the Debtor.[10] Except to the foregoing extent, the Motion is denied.

It is **SO ORDERED.**

Dated: August 3, 2007                                            BY THE COURT

*Lorraine Murphy Weil*
Lorraine Murphy Weil
United States Bankruptcy Judge

---

[10] In the event Attorney Zelotes' fails to comply with this order, the order shall be enforceable by the Debtor, the UST and/or the Trustee.